UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRE GOSTLIN,

       Plaintiff,                                   Hon. Richard Alan Enslen

v.                                                     Case No. 1:04-CV-635

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       The Commissioner determined that Plaintiff is not disabled as defined by the Act.  Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 49 years of age at the time of the ALJ's decision.  (Tr. 21).  She successfully completed high school and worked previously as a cashier, assembler, and machine operator.  (Tr. 21, 89-95).

Plaintiff first applied for benefits on March 18, 1997.  (Tr. 20, 71).  This claim was denied on August 15, 1997, and Plaintiff did not pursue the matter further.  *Id.*

Plaintiff again applied for benefits on March 24, 2001, alleging that she had been disabled since September 26, 1995, due to carpal tunnel syndrome, tendinitis, kidney stones, hiatal hernia, hearing loss, and lymphoma.  (Tr. 45-47, 76).  Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 38-44, 256-61).

On December 2, 2003, Plaintiff appeared before ALJ Earl Witten, with testimony being offered by Plaintiff and vocational expert, Donald Hecker.  (Tr. 481-516).  In a written decision dated February 12, 2004, the ALJ determined that Plaintiff was not disabled.  (Tr. 20-30). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 7-10).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2003.  (Tr. 21, 64-70); *see also*, 42 U.S.C. § 423(c)(1).  Accordingly, to be eligible for Disability Insurance Benefits under Title II

of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **MEDICAL HISTORY**

In 1990, Plaintiff underwent bilateral carpal tunnel release surgery. (Tr. 344-45, 349-50). Plaintiff experienced minimal difficulties following her surgery and was able to return to work with restrictions. (Tr. 346-71).

On June 19, 2000, Plaintiff was examined by Dr. Mark Marzolf. (Tr. 169-70). Plaintiff reported the presence of "a lump" in her right groin which "is increasing in size and is quite uncomfortable." (Tr. 169). A subsequent biopsy revealed that Plaintiff was suffering from "low-grade" non-Hodgkin's lymphoma. (Tr. 151, 305). Plaintiff also participated in CT scans of her chest, abdomen, and pelvis, the results of which revealed "no other adenopathy." (Tr. 195). Plaintiff subsequently participated in radiation treatment. (Tr. 179, 304-06). On June 13, 2001, Plaintiff was examined by Dr. Michael Zakem. An examination revealed "no obvious evidence of recurrence of [Plaintiff's] lymphoma." (Tr. 179).

On June 23, 2001, Plaintiff participated in a consultive examination conducted by Dr. Michael Simpson. (Tr. 212-16). Plaintiff reported that she was suffering from carpal tunnel syndrome, kidney stones, hiatal hernia, lymphoma, and hypertension. (Tr. 212). Plaintiff reported that as a result of her carpal tunnel release surgery she "has difficulty scrubbing the floor and vacuuming" and "finds it difficult to clean her shower and bathtub." Plaintiff also reported that she has been forced to discontinue gardening, bowling, and golf. With respect to her complaints of hiatal hernia, Plaintiff reported that she was experiencing abdominal discomfort for which she was not

taking any medication. *Id.* Plaintiff reported that she underwent nephrolithiasis[1] in 1983 and last experienced a kidney stone in 1996. (Tr. 213).

On examination, Plaintiff was able to hear "conversational speech without limitation" and her speech was "clear." The results of an examination were unremarkable and Plaintiff exhibited normal range of motion in her lumbar spine, wrists, and hips. (Tr. 213-14). Plaintiff walked with a normal gait and experienced no difficulty heel/toe walking, squatting, hopping, or getting on/off the examination table. (Tr. 214-15). She exhibited "full fist and grip strength bilaterally" and was able to "pick up a coin, open a door, and fasten buttons." (Tr. 214). Tinel's sign[2] was negative bilaterally and Plaintiff exhibited no evidence of sensory loss in her hands. *Id.* The doctor observed no evidence of a recurrence of Plaintiff's carpal tunnel syndrome. (Tr. 215). Romberg testing[3] was negative and Plaintiff exhibited "intact" motor and sensory functioning. (Tr. 214).

X-rays of Plaintiff's shoulders, taken on July 16, 2001, revealed "mild" irregularity on the interior surface of the acromion processes, but there was no evidence of fractures, dislocations, or destructive lesions. (Tr. 236).

On August 6, 2001, Plaintiff participated in a hearing test, the results of which revealed "mild to moderate" hearing loss in Plaintiff's left ear. (Tr. 218).

---

[1] Nephrolithiasis is the abnormal condition marked by the presence of concretions or calculi in the kidney. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* N-51 (Matthew Bender) (1996).

[2] Tinel's test (or Tinel's sign) refers to a tingling sensation at the end of a limb produced by tapping the nerve at a site of compression or injury. This test is also used to detect the presence of carpal tunnel syndrome. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* T-140 (Matthew Bender) (1996); Frank L. Urbano, M.D., *Tinel's Sign and Phalen's Manuever: Physical Signs of Carpal Tunnel Syndrome*, Hospital Physician, July 2000 at 39.

[3] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on July 8, 2005). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

5

On August 13, 2001, Plaintiff was examined by Dr. Edward Lee. (Tr. 310-11). Plaintiff reported that she was experiencing "discomfort" in her right groin which radiated into her right leg. (Tr. 311). She reported that she experiences difficulty standing for longer than 20 minutes or performing "certain activities" involving her right lower extremity. An examination revealed tenderness in Plaintiff's groin, but no evidence of nodules or lymphadenopathy. X-rays also revealed "no evidence of disease recurrence." Dr. Lee concluded that Plaintiff's groin pain was "secondary to musculoskeletal dysfunction and does not appear to be secondary to recurrent tumor." *Id.*

On August 30, 2001, Plaintiff was examined by Dr. Stephen Reznicek with respect to her kidney difficulties. (Tr. 319). An examination revealed the presence of a left kidney stone. The doctor further concluded that Plaintiff was experiencing bilateral chronic pyelonephritis.[4] *Id.*

On September 25, 2001, Plaintiff was examined by Dr. Paul Roose. (Tr. 243-44). Plaintiff reported that she was experiencing shoulder pain and neck discomfort. (Tr. 243). An examination of Plaintiff's shoulders was "normal" with no evidence of instability, swelling, deformity, or AC joint tenderness. Hyperabduction and impingement testing were negative and Plaintiff exhibited normal range of motion.

Plaintiff exhibited "limited" rotation and bending of her cervical spine, but compression testing was negative. *Id.* X-rays of Plaintiff's cervical spine revealed "minimal" spurring, but there was no evidence of disc space narrowing or foraminal encroachment. (Tr. 317). Dr. Roose concluded that Plaintiff was experiencing early hypertrophic spondylosis of the lower

---

[4] Pyelonephritis refers to inflammation of the kidney. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* P-389 (Matthew Bender) (1996).

6

cervical spine with myositis of the lower cervical and upper dorsal spine. (Tr. 244). The doctor instructed Plaintiff to participate in physical therapy. *Id.*

On October 19, 2001, Plaintiff underwent a lithotripsy[5] procedure to treat her left renal calculus. (Tr. 322).

X-rays of Plaintiff's abdomen, taken on January 9, 2002, revealed that Plaintiff was experiencing nephrolithiasis of the left kidney. (Tr. 403).

On June 12, 2002, Plaintiff was examined by Dr. Zakem. (Tr. 267). Plaintiff reported that she was experiencing pain in her right groin which radiates into her right leg. An examination of Plaintiff's groin revealed the presence of "some soft tissue fullness" which the doctor reported "appears to be continuing to diminish over time." The doctor further reported that there was no evidence of nodes or masses. Dr. Zakem concluded that Plaintiff "has no obvious evidence of recurrence of her stage I lymphoma." *Id.*

On January 15, 2002, Plaintiff was examined by Dr. Reznicek as a follow up to her recent lithotripsy treatment. (Tr. 321). Plaintiff reported that she had not passed any fragments and was still experiencing left-sided flank pain. An examination revealed "no change in the size or position" of her kidney stone. Dr. Reznicek doubted that a second lithotripsy treatment would be helpful and instead recommended to Plaintiff that she undergo surgery. *Id.*

On March 5, 2003, Plaintiff participated in an MRI examination of her lumbar spine, the results of which were "negative." (Tr. 465).

---

[5] Lithotripsy is the process of breaking up or crushing a "stone" within the bladder by means of a special instrument introduced through the urethra, the channel by which the urine is normally discharged from the bladder. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* L-147 (Matthew Bender) (1996).

7

On June 12, 2003, Plaintiff was examined by Dr. Howard Mahabeer. (Tr. 436-37). Plaintiff reported that she was experiencing "constant" pain in her joints and muscles. (Tr. 436). She reported that she was depressed and was "unable to do any lifting." *Id.* Plaintiff exhibited "tenderness to palpation in her joints of the shoulder, knees, thighs and back," but the results of the examination were otherwise unremarkable. (Tr. 437). The doctor diagnosed Plaintiff with fibromyalgia and chronic pain syndrome. *Id.*

On October 10, 2003, Plaintiff was examined by nephrologist Dr. Shoaib Chowdhury. (Tr. 445-48). Plaintiff reported that she was not experiencing flushing, palpitations, headache, blurred vision, or numbness. (Tr. 445). Plaintiff noted that while she was experiencing "urinary frequency," she was not experiencing dysuria, urgency, or gross hematuria. (Tr. 446). She reported that her flow of urine was "strong" and that she was not experiencing swelling of her lower extremities, periorbital swelling, foaming of the urine, or changes in skin color. *Id.* The results of a physical examination were unremarkable. (Tr. 446-47). X-rays of her kidneys revealed: (1) bilateral renal atrophy, (2) a single, small left renal calculus, and (3) no evidence of hydronephrosis. (Tr. 449). Plaintiff was diagnosed with recurrent nephrolithiasis, proteinuria, and chronic kidney disease. (Tr. 448). Dr. Chowdhury concluded that further evaluation was necessary to determine the etiology of, and most appropriate treatment for, Plaintiff's kidney impairments. (Tr. 448).

At the December 2, 2003 administrative hearing, Plaintiff testified that she experiences "constant pain, 24/7." (Tr. 488). She reported that if she does "anything" her pain increases and intensifies. *Id.* Plaintiff testified that she experiences "bad days" on which she is unable to "get out of bed at all." (Tr. 487). Plaintiff reported that she can stand and sit for 20

minutes each, and lift five pounds. (Tr. 487, 489). She testified that she is unable to perform household chores. (Tr. 490-91).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[6] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ found that Plaintiff suffers from the following severe impairments: (1) hearing loss, left ear; (2) non-Hodgkin's lymphoma, status-post radiation; (3) carpal tunnel

---

[6] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

9

syndrome, status-post surgery; (4) kidney disease; and (5) multiple pain complaints (fibromyalgia, back, and chest pain). (Tr. 24). The ALJ determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 24-25). The ALJ further determined that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 25-28). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following restrictions: (1) she can

lift/carry up to 20 pounds occasionally and 10 pounds frequently, (2) she requires a sit/stand option, (3) she cannot perform repetitive, forceful gripping or grasping activities, (4) she cannot perform repetitive bending, twisting, or turning, (5) she cannot crawl, squat, kneel, or climb, (6) she cannot use air or vibratory tools, (7) she should not work around unprotected heights or moving machinery, (8) she cannot perform overhead work, and (9) she is limited to the performance of simple, routine, one or two step process jobs. (Tr. 26). After reviewing the relevant medical evidence, the undersigned concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could no longer perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Donald Hecker.

The vocational expert testified that there existed approximately 14,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 507-09). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold). The vocational expert further testified that if Plaintiff were limited to the performance of sedentary work, there still existed 9,000 jobs which she could perform. (Tr. 509-10).

a. The ALJ Properly Assessed the Medical Evidence

On June 12, 2003, Plaintiff was examined by Dr. Mahabeer. (Tr. 436-37). Following his examination of Plaintiff, the doctor "recommended" that Plaintiff "be off work until further notice." (Tr. 437). While not stated directly, Plaintiff appears to assert that because Dr. Mahabeer was her treating physician, the ALJ was obligated to accord controlling weight to his opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at

12

*2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. Finally, the ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

Dr. Mahabeer did not identify any specific limitations from which Plaintiff allegedly suffered. Instead, he merely offered the recommendation that Plaintiff be "off work"[7] for an unspecified period of time. To the extent that Dr. Mahabeer's "opinion" is characterized as simply concluding that Plaintiff is disabled, such is entitled to no deference because the determination of disability is a matter left to the commissioner. *See* 20 C.F.R. § 1527(e)(1).

Furthermore, the record indicates that Plaintiff was examined by Dr. Mahabeer on only a single occasion. Having examined Plaintiff on only one occasion, Dr. Mahabeer's opinion is not entitled to any special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 571-72 (6th Cir. 1989). Moreover, even if Dr. Mahabeer were considered a treating physician, the ALJ properly discounted his opinion.

---

[7] According to Plaintiff's testimony, she was not "on work" as of the date she was examined by Dr. Mahabeer. (Tr. 485). In fact, Plaintiff testified that she had not worked since December 1999, more than three years before her examination by Dr. Mahabeer. *Id.*

First, Dr. Mahabeer's opinion is contradicted by substantial medical evidence. None of Plaintiff's other care providers offered the opinion that she was disabled or imposed upon her limitations which are inconsistent with the ALJ's RFC determination. Moreover, as the ALJ correctly observed, Dr. Mahabeer

> indicated the clamant should be off work until further notice but her examination was based on subjective complaints. His opinion provided very little explanation of the evidence relied on in forming that opinion. The claimant did have some tenderness to palpation in her shoulders, knees, thighs, and back but Dr. Mahabeer noted that neurologically, the claimant was intact. In addition, he offered a diagnosis of fibromyalgia, however, there is no indication that [Plaintiff] had pain in 11 of 18 tender point sites on digital palpation as required by the American College of Rheumatology's definition of fibromyalgia. Additionally, she was never referred to a Rheumatologist.

(Tr. 26).

Contrary to Plaintiff's assertions, the issue is not whether Plaintiff suffers from fibromyalgia, but instead whether such renders her disabled. As discussed above, the ALJ properly discounted Dr. Mahabeer's conclusory opinion.

b. The ALJ Properly Evaluated Plaintiff's Impairments

Plaintiff also claims that the ALJ improperly failed to recognize that she suffered from fibromyalgia and, furthermore, failed to consider the combined effects of her various impairments.

The ALJ expressly found that Plaintiff suffered from fibromyalgia. (Tr. 24). The ALJ simply determined, however, that Plaintiff's fibromyalgia was not disabling in severity. As the medical evidence detailed above reveals, this determination is supported by substantial evidence.

14

Moreover, the record reveals that the ALJ did consider the combined effects of Plaintiff's various impairments. The ALJ properly identified - and discussed at length - the various impairments from which Plaintiff suffers. As the ALJ stated, he reached his decision "after careful consideration of the entire record." (Tr. 29). This sufficiently indicates that the ALJ properly considered the combined effect of Plaintiff's various impairments. *See Loy v. Sec'y of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589, 591-92 (6th Cir. 1987)).

c. Plaintiff is not entitled to a remand in this matter

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 471-80). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 7-10). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Id.* To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner

would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material consists of a favorable determination made by the Family Independence Agency (FIA) in response to Plaintiff's application for state disability assistance. This decision was issued on December 18, 2003, fifty-six (56) days before the ALJ issued his decision in this matter. However, Plaintiff offers no reason for her failure to submit this material to the ALJ.

Moreover, it is not reasonable to conclude that consideration of this material by the ALJ would have led to a different result. The decision by the FIA is not binding on the Commissioner. *See* 20 C.F.R. § 404.1504. Moreover, the FIA's decision contains absolutely no analysis of Plaintiff's impairments or why such render her disabled. In fact, the few references to the medical record in the FIA's decision support the conclusion that Plaintiff is *not* disabled. The FIA's decision is little more than an unsubstantiated conclusion unsupported by factual analysis. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## CONCLUSION

As articulated herein, the Court concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order.  *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                              Respectfully submitted,


Date:  July 14, 2005                          /s/ Ellen S. Carmody  
                                          ELLEN S. CARMODY  
                                          United States Magistrate Judge